## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW CORRIGAN                )
23183 Hemmingford Circle        )
Dulles, VA 20166                )
                                )
    Plaintiff                   )
                                )
        v.                     )
                                )
THE DISTRICT OF COLUMBIA        )
Serve:                          )
Mayor Vincent C. Gray           )
1350 Pennsylvania Avenue, NW    )
Suite 316                       )
Washington, DC 20004            )
                                )
and                             )
                                )
JOHN DOES I-XV                  )
                                )
    Defendants                  )

### COMPLAINT

1) This is an action for damages, pursuant to 42 U.S.C. § 1983, for violation of Plaintiff's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures.

### Parties

2) Plaintiff Matthew Corrigan was, at all times relevant hereto, a resident of the District of Columbia and a citizen of the United States.  Corrigan is an Army Reservist who works for the Bureau of Labor Statistics and currently resides in Virginia.

3) Defendant District of Columbia is the Seat of the Government of the United States and a municipal corporation organized under the Constitution and laws of the United States.

-1-

4)   Defendants John Does I-XV are police officers of the Metropolitan Police Department.

### Jurisdiction And Venue

5) Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States.

6) Venue lies in this district pursuant to 28 U.S.C. § 1391.

### Facts

7) On the night of February 2, 2010, Corrigan was in his home at 2408 N. Capitol Street, N.W., which he occupied with his dog.

8) Corrigan telephoned what he believed to be the "Military's Emotional Support Hotline" because he was depressed and had not slept for several days.

9) The number Corrigan called was in fact the National Suicide Hotline.  When he stated that he was a veteran, he was asked if he had firearms, to which he said yes.  He said nothing about being suicidal or using a firearm or threatening any one.  After a short conversation, Corrigan hung up, turned off the phone, took prescribed sleeping medication, and went to bed.

10) At approximately 4 a.m. in the morning of February 3, 2010, Corrigan awoke because he heard his name being called over a bullhorn.  There were floodlights outside his front and back doors and an estimated 8 police officers in the back yard and 20 in the front yard.

11) Corrigan turned on his phone and found that Officer Fischer of the 5th District was calling him, asking him to come out, which he did at about 4:50 a.m., locking the door behind him.  He was handcuffed and

put in the back of a SWAT truck.

11) When Officer John Doe I (upon information and belief, Officer John Doe I is Lieutenant Robert Glover) asked Corrigan for the key to his apartment, he informed the officer: "There is no way I am giving you consent to enter my place."  Officer John Doe I stated: "I don't have time to play this constitutional bullshit!" and ordered that Officers John Does II-V, members of the Emergency Response Team (ERT), to enter the apartment.

12) Corrigan was placed in a patrol car and taken to the VA Hospital, where he arrived at about 5:30 a.m.

13) After Corrigan was removed from the scene, John Does II-V, members of the ERT, entered the apartment, without a warrant, by breaking the locked front door.  Upon information and belief, the ERT officers remained in Corrigan's home for approximately 20 minutes, and determined that Corrigan's home was secure.

14) Corrigan's dog was seized by Animal Control and taken to the DC Animal Shelter.

15) Although the officers had no information that there were explosives in Corrigan's home and the home had been secured, John Does VI-X, the Explosives Ordinance Disposal (EOD) team, entered Corrigan's home without a warrant and searched for explosives.  The EOD team opened closed containers and used x-ray equipment to search closed containers.

16) After the initial warrantless search, the EOD team brought in a dog to search for firearms.

17) During the search of Corrigan's home, John Does II-XV seized three firearms and numerous rounds of ammunition for those firearms and others.  The three firearms were a rifle, which was unloaded and trigger-locked in a locked hard-side container under his bed, a handgun which was in a hard case in a drawer in the closet, and another handgun which was in a zipped bag on the shelf at the bottom of a clothes rack (pillows and blankets were on top and next to the bag).  The locked cases were taken but the broken latches were left on the floor.  The ammunition was stored in a sealed plastic crate and the rest was in boxes, in their original packing, in a milk crate, which was stored under a sleeping bag in a utility closet.

18) Corrigan's  eyeglasses were broken and thrown in a corner.

19) At the VA Hospital, Corrigan admitted himself voluntarily for three days.  Having weapons pointed at him upon leaving his apartment triggered his PTSD hyper-vigilance and caused irregular heartbeat.

20) On the third day at the VA Hospital, Corrigan was released into police custody, arrested, booked at the 5th District, and taken to a local Mental Health Clinic to be reviewed as a suicide risk.

21) After being determined not to be a suicide risk, Corrigan was taken to central cell block awaiting arraignment for three days; from there, he was placed in the D.C. jail, where he remained until February 19, when he was released on his own recognizance to report to Pretrial Services weekly.

22) When Corrigan returned to his apartment 16 days after being seized, he found that John Does I-XV had left the front door unlocked

and unsecured, had left the electric stove on, had cut open every zipped bag, had dumped every box and drawer, had broken locked boxes from under the bed and the closet, and emptied shelves into piles in each room. All his tropical fish in his 150 gallon aquarium were dead.

## COUNT I

23) The allegations contained in the foregoing paragraphs are incorporated by reference.

24) The Fourth Amendment to the United States Constitution provides in part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .

25) 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of . . . the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

26) Defendant District of Columbia and Defendants John Does I-X are "persons" within the meaning of 42 U.S.C. § 1983.

27) Defendants John Does I-XV conducted a warrantless search of Corrigan's home in violation of the Fourth Amendment, and seized Corrigan's property from his home without a warrant in violation of the Fourth Amendment.

28) Upon information and belief, the warrantless search of

Corrigan's home in violation of the Fourth Amendment, and the warrantless seizure of Corrigan's property from his home in violation of the Fourth Amendment, was pursuant to policy, custom, or usage of the District of Columbia.

29) Defendants John Does I-XV acted under color of District of Columbia law in subjecting Corrigan to the violation of his rights secured by the Fourth Amendment.

30) Defendant District of Columbia and Defendants John Does I-XV are liable to Corrigan for damages in an amount to be determined at trial, but not less than $500,000, for depriving him of the rights, privileges, or immunities secured by the Fourth Amendment.

WHEREFORE, Plaintiff prays that the Court:

1) Award compensatory damages to Corrigan in an amount to be determined at trial, but not less than $500,000.

2) Grant such other and further relief as may be proper.

3) Award plaintiff attorney's fees and costs.


Respectfully submitted,

Matthew Corrigan
By Counsel


_____
Richard E. Gardiner
D.C. Bar No. 386915
Suite 403
3925 Chain Bridge Road
Fairfax, VA  22030
(703) 352-7276
(703) 359-0938
regardiner@cox.net